Larry LUKE, Individually, Larry Luke, as Special Administrator of the Estate of Lisa Luke, Deceased, and Kathleen Luke, Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.

Civ. 70-24S.

United States District Court, D. South Dakota, S. D.

April 29, 1971.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This action is now before this court on cross-motions by the several parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs as assignees of the alleged insured, Herbert Carl Llewellyn, and under S.D.C.L. Sec. 58–23–1 (1967), seek to recover damages from the defendant in the amount of state court judgments totaling $138,840.12 obtained against Llewellyn plus costs, interest on the judgments and attorneys' fees for this action. The action is based on defendant's insurance policy no. 40–054467 issued by defendant to Llewellyn. The plaintiffs allege that defendant unjustifiably denied coverage under the policy, wrongfully refused to defend, and negligently and in bad faith refused to settle within the policy limits. Federal jurisdiction is based on diversity of citizenship under 28 U.S.C. Sec. 1332 (1964).

## POLICY COVERAGE

The material facts relating to the issue of policy coverage on the 1967 Pontiac owned by Llewellyn and which was involved in the accident out of which the state court judgments arose are not in dispute. That plaintiffs have a direct cause of action for damages up to the policy limits pursuant to S.D.C.L. Sec. 58–23–1 (1967) is admitted by defendant in its answer. The question determinative of policy coverage is: Did defendant at the time Llewellyn acquired ownership of the 1967 Pontiac involved in the accident insure, under the liability coverage of the policy, all automobiles owned by the named insured? If the defendant did insure all such automobiles on the date in question, the 1967 Pontiac was covered under the "automatic insurance" provisions of the policy.[1]

Gerald L. Reade, of Brady, Kabeiseman, Light & Reade, Yankton, S. D., for plaintiffs.

John B. Shultz, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant.

---

1. The "automatic insurance" provisions of the policy afford thirty days automatic coverage to a private passenger or utility automobile ownership of which is acquired by the named insured during the policy period provided: "(2) the company insures under the Liability Coverage, all private passenger and utility automobiles owned by the named insured on the date of its acquisition."

At all times material to this action defendant insured under the policy in question a 1966 Pontiac owned by Llewellyn. On October 15, 1966, he purchased a 1959 Oldsmobile from Wilson Motor Company, Sioux City, Iowa, while he was working and living in Sioux City on a temporary basis. Llewellyn operated the 1959 Oldsmobile until on or about January 15, 1967, without obtaining liability insurance on it.

On or about the 15th of January, 1967, the 1959 Oldsmobile became disabled with engine trouble. Llewellyn contacted Anderson, an employee of Wilson Motor, and together they towed the 1959 Oldsmobile to Wilson Motor's place of business. On the morning of the following day, January 16, 1967, Llewellyn unsuccessfully attempted to purchase a different automobile from Wilson Motor. Later the same day Llewellyn purchased the 1967 Pontiac from Souder's Pontiac in Sioux City, Iowa. On February 4, 1967, Llewellyn while driving the 1967 Pontiac was involved in an accident with an automobile occupied by the plaintiffs and their deceased daughter, Lisa Luke.

After a thorough investigation into the facts of the accident and the facts relating to the ownership of the 1959 Oldsmobile and the 1967 Pontiac, the defendant denied coverage on the 1967 Pontiac on the basis that it did not qualify as an "owned" automobile under the terms of the insurance contract.

■ The insurance contract in question was entered into in South Dakota. Since no intent on the part of the parties to be bound by the law of some other place has been shown, the policy must be construed in accordance with South Dakota law. American Service Mutual Ins. Co. v. Bottum, 371 F.Supp. 6, 8–9 (8th Cir. 1967); Briggs v. United Services Life Ins. Co., 80 S.D. 26, 117 N.W.2d 804, 806–807 (1962). Under South Dakota law when an automobile insurance policy is susceptible to two constructions, one favorable and one unfavorable to the insurer, the construction which is against the insurer must be adopted. Royal Indemnity Co. v. Metropolitan Cas. Ins. Co. of New York, 80 S.D. 541, 128 N.W.2d 111 (1964); Sunshine Mut. Ins. Co. v. Addy, 73 S.D. 595, 47 N.W.2d 285 (1951).

The 1959 Oldsmobile was purchased, licensed and titled in Iowa. This court agrees with the defendant that under Iowa law Llewellyn owned the 1959 Oldsmobile at the time the 1967 Pontiac was acquired. Llewellyn was the registered owner at the time in question and could have obtained possession of the 1959 Oldsmobile by paying Wilson Motor the balance of the purchase price plus costs of storage and towing. ICA § 321.45 (2); Calhoun v. Farm Bureau Mutual Ins. Co., 255 Iowa 1375, 125 N.W.2d 121 (1963); Varvaris v. Varvaris, 255 Iowa 800, 124 N.W.2d 163 (1963). It remains to be determined, however, whether the 1959 Oldsmobile was at that time an automobile owned by the named insured within the meaning of the applicable policy provisions.

■ The South Dakota Supreme Court has not yet ruled on the meaning of "owned automobile" in such a context. This court finds that the South Dakota Supreme Court would hold that the phrase "all private passenger and utility automobiles owned by the name insured" contained in this policy "does not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance." Canal Ins. Co. v. Brooks, 201 F.Supp. 124, 128 (W.D.La.1962), aff'd. 309 F.2d 751 (5th Cir., 1962); see also, Glens Falls Ins. Co. v. Gray, 386 F.2d 520, 524–525 (5th Cir. 1967); Allstate Ins. Co. v. Stevens, 313 F.Supp. 819 (D.C.Hawaii 1970); Lynam v. Employers' Liability Ass. Corp., 218 F.Supp. 383 (D.C.Del.1963), aff'd. 331 F.2d 757 (3rd Cir. 1963); Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (1940).

In this case the 1959 Oldsmobile was disabled with engine trouble at the time the 1967 Pontiac was acquired by Llewellyn. The 1959 Oldsmobile was in the possession of Wilson Motor. Three

hundred and fifty dollars were owed by Llewellyn on the purchase price of the 1959 Oldsmobile and he was delinquent in his payments. Llewellyn's intentions as to any further use of the 1959 Oldsmobile are evidenced by the purchase of the 1967 Pontiac for use in the same manner as the 1959 Oldsmobile was used. The extent of the disability of the 1959 Oldsmobile is evidenced by the fact that it was later sold by Wilson Motor to Highway 20 Auto Parts, Sioux City, Iowa, a salvage dealer, for seventy-five dollars.

■ Based on the above recited facts, this court finds that the 1959 Oldsmobile was not an automobile owned by the named insured within the meaning of the "automatic insurance" provisions of the policy at the time the 1967 Pontiac was acquired. Defendant insured, under the liability coverage, all automobiles owned by Llewellyn at the time the 1967 Pontiac was acquired. Therefore, the 1967 Pontiac was covered under the policy and defendant is liable to the plaintiffs up to the policy limits.

### EXCESS LIABILITY

The policy limits in this case are $25,000 per person and $50,000 per accident for bodily injury and death. The claim for property damage is within the $10,000 policy limits. The plaintiffs rely on two theories in support of their claim for damages in excess of the policy limits: (1) that the breach of the duty to defend entitles them to such a recovery and, (2) that the defendant breached its duty to exercise good faith in refusing to accept the settlement offers made by the plaintiffs prior to the entry of the state court judgments.

Generally, the breach by an insurer of its duty to defend does not subject it to liability for an amount of a judgment or settlement which is in excess of the policy limits. Seward v. State Farm Mutual Automobile Ins. Co., 392 F.2d 723 (5th Cir. 1968); Dairyland Ins. Co. v. Hawkins, 292 F.Supp. 947 (S.D. Iowa 1968); Anno., 49 A.L.R.2d 694, Sec. 11. Several recent cases have held,

however, that where the insurer has unjustifiably breached its duty to defend and has in addition rejected a settlement offer within the policy limits, the insurer may be held liable for damages in excess of the policy limits. In one line of cases good faith on the part of the insurer in refusing to defend is held not to constitute a defense in an excess action. Foundation Reserve Ins. Co. v. Kelly, 388 F.2d 528 (10th Cir. 1968); Herman v. Western Casualty and Surety Co., 271 F.Supp. 502 (E.D.Mo.1967), aff'd. 405 F.2d 121 (8th Cir. 1967); Comunale v. Traders and General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958).

Another line of cases, while recognizing that an insurer may be held liable above its policy limits when a refusal to defend is accompanied by a refusal to settle within the policy limits, conditions such excess liability on a finding that the insurer was guilty of bad faith in refusing to defend. Back v. Pennsylvania National Mutual Cas. Ins. Co., 429 F.2d 813 (5th Cir. 1970); State Farm Mutual Ins. Co. v. Skaggs, 251 F.2d 356 (10th Cir. 1957); Fidelity & Casualty Co. of New York v. Gault, 196 F.2d 329 (5th Cir. 1952); Dairyland Ins. Co. v. Hawkins, 292 F.Supp. 947 (S.D.Iowa 1968); see also, Bolling v. Westchester Fire Ins. Co., 309 F.Supp. 4 (E.D.Tenn. 1969).

■■ South Dakota has recognized that an insurance company may conduct itself in such a manner as to be held liable for damages in excess of the policy limits. Kunkel v. United Security Ins. Co. of New Jersey, S.D., 168 N.W.2d 723 (1969). Kunkel involved a refusal by an insurance company to settle within the policy limits after it had assumed control of the defense of the action. In Kunkel the court conditioned excess liability in that situation upon a finding that the insurer had exercised bad faith in rejecting the settlement offer. It is the opinion of this court that the South Dakota Supreme Court would also condition liability in a case such as the one at bar upon a finding that the insurer

**1334**

exercised bad faith in reaching its decision not to defend.

What constitutes bad faith is difficult to define. Each case must be determined upon its own facts. While something more than mere negligence is required, the character and extent of the insurer's negligence may be considered. Generally speaking, the interests of the insured must be afforded equal consideration to those of the insurer. Kunkel v. United Security Ins. Co. of New Jersey, S.D., 168 N.W.2d 723 (1969).

■ In this case this court finds as a matter of law that the defendant was not guilty of bad faith in its denial of coverage and refusal to defend. This finding is based on the following factors: (1) defendant conducted a thorough investigation into the facts relative to the existence of policy coverage; (2) Llewellyn was promptly notified of the decision to deny coverage; (3) the clause upon which coverage turns has not been interpreted by the state supreme court; and (4) the interpretation relied upon by the insurer in reaching its decision to deny coverage under the policy was not unreasonable. Beck v. Pennsylvania National Mutual Ins. Co., 429 F.2d 813 (5th Cir. 1970); State Farm Mutual Ins. Co. v. Skaggs, 251 F.2d 356 (10th Cir. 1957); Fidelity & Casualty Co. of New York v. Gault, 196 F.2d 329 (5th Cir. 1952); Dairyland Ins. Co. v. Hawkins, 292 F. Supp. 947 (S.D.Iowa 1968); *see also,* Bolling v. Westchester Fire Ins. Co., 309 F.Supp. 4 (E.D.Tenn.1969). The claim for damages in excess of the policy limits is denied.

### ATTORNEYS' FEES

■ This court finds that defendant's refusal to pay the judgments in question was not unreasonable or vexatious under S.D.C.L. 58-12-3 (1967). Plaintiffs' claim for attorneys' fees is denied.

Counsel shall prepare appropriate orders in accordance with this memorandum decision. Plaintiffs are entitled to judgment under the bodily injury and death provisions of defendant's policy

no. 40-054467 in the following amounts: (1) Larry Luke—$11,867.50; (2) Larry Luke as Special Administrator of Lisa Luke—$13,132.50; (3) Kathleen Luke—$25,000.00. In addition plaintiff Larry Luke is entitled to judgment in the amount of $1,654.29 under the defendant's property damage coverage. Interest shall run on these amounts from the date of the state court judgment and costs shall be awarded to the plaintiffs.